New York County.—HON. D. C. CALVIN, Surrogate.—
May, 1877.

MATTER OF CARMAN.

*In the matter of the final accounting under the will of* RICHARD F. CARMAN, *deceased.*

A testator devised all the residue of his property to his executors in trust (with power of sale) to divide it into three equal shares and pay over the rents and profits of one share to A for his life. The executors, on a final accounting before the surrogate, on which they were allowed full commissions, were ordered to set apart and keep invested for the benefit of A, a fixed sum (being one-third of the residue). The executors set apart such sum and kept a separate account of it, and paid over the rents and profits to A during his life, and on his death accounted as testamentary trustees before the surrogate, under 2 *R. S.* 94, § 66, as amended by L. 1866, ch. 115. *Held,* that they were entitled to the full commissions under that act, as though they had never accounted as executors.

THE question submitted was whether the trustees were entitled to full commissions as such, by having settled their accounts as executors, and received their commissions as such.

The will devised and bequeathed all the rest, residue and remainder of the testator's estate to his executors, to sell in their discretion; to divide it into three equal shares, and of the shares respectively pay over the rents and profits of one of said shares to his son Charles E. Carman, during his life, and after his death to divide the same among his children. Three executors qualified, and in 1870 they accounted to the surrogate, and a decree for settlement of their account was made November 22d, 1870, whereby they were ordered to set apart and keep invested $305,504.91, being one-third of the estate, for the benefit of Charles E. Carman, as directed by the will.

It appeared that they opened a separate bank account and set of books, as trustees of such fund, and that the same has been kept separate from the rest of the estate, and not included in their subsequent accounting as executors.

Charles E. Carman and one of the executors having died, the survivors now render their account, and ask their full commissions under chapter 115 of the Laws of 1866.

J. H. HARRISON, *for Mrs. Caroline Carman.*

GEO. P. KIP, *for the executors.*

ELBRIDGE T. GERRY, *for heirs-at-law.*

CHARLES E. WHITEHEAD *and* W. A. W. STEWART, *for trust companies.*

F. F. VAN DERVEER, *for creditors.*

THE SURROGATE. — The act of 1866 chap. 115, provides that any trustee created by a last will and testament, or appointed by any competent authority to execute any trust created by such last will and

testament, may, from time to time, render and finally settle his accounts before the surrogate, in the manner provided by law for final settlement of the accounts of executors and administrators, and that on such accounting as such trustees, the surrogate before whom such accounting may be had shall allow to the trustee or trustees the same compensation for his or their services, by way of commissions, as are allowed by law to executors and administrators.

In Meecham v. Sternes (9 *Paige*, 398, decided in 1842,) it was held that where the instrument creating the trust says nothing as to the compensation of the trustee, the law implies the agreement to perform the services for the same allowance which is made by statute to executors, &c., but under this law it seems to have been held in Valentine v. Valentine (2 *Barb. Ch.*, 433,) Drake v. Price (5 *N. Y.*, 430,) and Mann v. Lawrence (3 *Bradf.*, 424,) that where a trust and executorship were inseparable, the trustee was not entitled to double commissions, first in his character as executor, then in his character as trustee. But in Valentine v. Valentine (p. 438) the Chancellor says: "The case would have been different if the executors had been directed by will to pay over this part of the fund to one of their number as trustee upon a separate and distinct trust." And in Drake v. Price (above), Foot, J., (p. 431), in commenting upon Valentine v. Valentine, says: "The Chancellor in that case decided that the executors held the funds in their character of executors, and not as trustees, and upon that principle it was held in that case that executors in making, in pursuance of the direction in the will, the investment

of a portion of the testator's estate at interest, and in collecting and paying such interest to the person to whom they are directed by will to pay the same annually for life, acted as executors, and were entitled only to such commissions on sums so received and paid over as are allowed by the statute to executors," plainly implying, as it seems to me, that where trustees held the funds in their character of trustees, after they had accounted as executors and ceased to act as such, they would be entitled to full commissions as trustees.

The will in this case, in conferring upon the accounting parties the office of trustee in respect of the fund set apart by them for Charles E. Carman, as to which they are now accounting, seems to discriminate between the office of executor and trustee, which creates the very distinction between the will in question and that referred to in Valentine v. Valentine, and recognized by the learned Chancellor, and if, in his language, the will had directed the executors to pay over the fund to one of their number as a trustee, upon a separate and distinct trust, would have entitled that trustee to full commissions, then it seems to me that the trustees in this case are equally entitled to their full commissions, and would have been so before the act of 1866, for either of the executors might have posession of the entire assets of the estate, and if perchance the executor who was named as trustee should have had possession of the whole fund, that circumstance would not deprive him, under the authority above cited, of his commissions.

Though the statute provides for the allowance of

4

commissions for receiving and paying out, it is evident that commissions are, in fact, intended to cover all the services rendered, not only in receiving and paying out, but for investing, caring for, attending to same, and the responsibility which the law attaches to such a trust, which may be vastly more onerous than the mere receipt and disbursement of the fund. The terms receipt and payment are certainly not intended to be taken literally, for where property is turned over to a party in interest, and accepted as payment of money, commissions are earned. (Matter of Kellogg, 7 *Paige*, 266; Foley *v*. Egan, 13 *Alb. Pr. N. S.*, 362, *note*). So where good securities are assigned to trustees (who succeeded the executors) as permanent securities, instead of being collected and having the proceeds reinvested. (Cairns *v*. Chaubert, 9 *Paige*, 160.) So a trustee is entitled to commissions on surcharge of a debt due to himself as one of the cestui-que-trusts, and on the balance which he is decreed to pay over. (Meecham *v*. Sternes, 9 *Paige*, 398; Wagstaff *v*. Lowerre, 23 *Barb.*, 209). In Drake *v*. Price (above cited) the learned judge, giving the opinion of the court, states as follows : " The material question in this case is, whether the appellant and his deceased co-executor held the funds as executors or as trustees, or, in other words, whether, as executors, they had paid it over to themselves, as trustees, and held in the latter character."

In the case under consideration it is admitted that the funds accounted for in this proceeding are held by the trustees as such.

In neither of the cases cited, as against allowing the commissions asked for, was there the designation of the executor, as trustee, charged with duties as such.

In Mann *v.* Lawrence (above cited) no such question arose. In Valentine *v.* Valentine the learned Chancellor held that the trust and executorship were inseparable, and that the funds were held by them in their character of executors; and in Drake *v.* Price the question was made to turn upon the fact whether the fund was held by the executors as such; and all of these cases were decided prior to the statute of 1866. Chapter 115 of the Laws of 1866 (above cited) seems to me to preserve a distinction between executors and testamentary trustees, and to award to them compensation by way of commission as though they were not also executors, and that full commissions to the trustees accounting in this proceeding should be allowed as though they were executors accounting in respect to the same fund.

Suppose an executor were appointed who owed the estate a large sum of money,— under the statute it is deemed an asset in his hands, and yet he would be entitled to commissions for receiving that sum.

Suppose again the estate is indebted to the executor, and of the funds received he retains sufficient to pay himself that claim, he would be entitled to commissions for paying himself that sum. That question is expressly decided in Meecham v. Sternes (9 *Paige,* 298), and when the statute in question says that on the accounting of trustees they shall be entitled to the same commissions as are allowed by law to executors and administrators, it makes no exception to the case where they have been executors also, and received funds from them as trustees.

The Case of Pirnie (1 *Tuck.,* 119,) enunciates the

principle that the act of 1866 gives full commissions to a trustee on each accounting; but there is no statement of the facts of that case, and I am inclined to the opinion that the use of the expression, "full commissions," has been misunderstood. The evident intention of the surrogate was to hold that on each accounting for all such assets in hand accounted for, as had not already paid commissions to the trustee, the estate should be chargeable with full commission, to wit: 5, $2\frac{1}{2}$ and 1 per cent.

From such examination as I have been able to give the authorities, and the most careful consideration of the language and purpose of the act of 1866, I am of the opinion that the trustees on this accounting are entitled to commissions, as though they had never accounted as executors.

Order accordingly.