CORNELIUS SAVAGE et al., Respondents, *v.* HENRY SHERMAN et al., Respondents, JOHN M. PINKNEY, Appellant.

Where, in an action brought to obtain the construction of a will which created a trust, after judgment had been entered determining the rights and interests of the parties, P. purchased the shares of some of the defendants: *held*, that the court had jurisdiction to make him a party to the accounting of the trustees, and to compel him to abide the result of the accounting, and if he had received more of the fund than he was justly entitled to, the court had power to compel him to restore the excess by order, without action being brought against him.

The judgment contained a provision that any party to the action, or successor in interest to a party, might apply on the foot of the judgment for further directions. One of the parties presented a petition, setting forth that three of the four trustees appointed by the will had died, and asking for the appointment of others in their place, and that all should be required to give security. The petition also set forth the purchase by P.; a copy thereof, with order to show cause, was served upon P.; he did not appear; the other parties did, and an order was made which among other things, recited that C., the surviving trustee, had presented a petition for the settlement of his accounts, and ordered that it be referred to a referee named, to settle and pass the accounts of all the trustees, to take proof thereof, and as to their commissions, and to report such accounts as settled, and the proofs, with his opinion thereon. A copy of the order was served on P., and he was served with notice of the hearing before the referee ; he did not appear upon the accounting. *Held*, that P. was, by these proceedings, made a party to the accounting ; that if the order therefor was irregularly made, he should have raised the question at that time ; that under the order the referee had the power to settle the accounts and to make all proper allowances for the expenses and commissions of the trustees, and to report the proportion thereof to be borne by each of the parties interested in the fund; also, that P., if he desired to make objection to the amounts of the charges, should have appeared before the referee ; and, not having done so, he could not review the allowances therefor, here.

During the pendency of the reference, the real estate was sold by the surviving trustee, and in the statement of the accounts the referee charged the share of P. with the payment of a sum more than his share after deducting expenses and commissions, this excess the report states he should pay back. There was no other finding of the fact of such payment, and no statement as to when and by whom it was made, and there was no proof, in the evidence returned, of such payment. An order to show cause the next day, why the report should not be confirmed, etc., was granted. P. appeared upon the hearing, and presented his affidavit, in which he deposed that neither of the trustees had ever received for or paid over to

him the sum so charged in the report. This affidavit was, on objection of the counsel for C., rejected ; the court confirmed the report, and the account of P. was stated, with a recital that he had received the sum charged, and he was ordered to refund the over-payment. *Held,* that as the usual practice of filing report and allowing parties time to file exceptions was not followed, and as the findings of the referee did not have the force of findings upon issues referred to him to hear and determine ; also, as the question whether P. was bound to refund was not submitted to him, it was competent for C. when the report was presented on the hearing, upon the order to show cause, to take the objection and to support it by his affidavit ; that his failure to appear on the reference did not preclude him from so doing ; and that, therefore, the order was erroneous ; before making it the court should have required satisfactory proof of the payment.

By the order, allowances were made to the several counsel of the parties who appeared on the accounting, as well as to the counsel for the trustees, which sums were fixed by stipulation of said counsel, and P. was ordered to pay his proportion of said allowances. *Held* error ; that while the trustees were entitled to be allowed their reasonable expenses, including counsel fees, and P. was properly charged with his proportion thereof, the counsel for the other parties should look to their respective clients for compensation, and the latter were not entitled to call upon others to share this burden.

While, where all of the parties to such an accounting appear by counsel, it may be proper for them to agree to have the counsel fees of all paid out of the common fund, yet where one of them has not litigated, and no allowance is made to him, he should not be compelled to contribute to the counsel fees of those who chose to litigate.

(Argued November 22, 1881 ; decided January 17, 1882.)

APPEAL by John M. Pinkney, from order of the General Term of the Supreme Court, in the first judicial department, made March 11, 1881, which affirmed, as to him, an order of Special Term, confirming and making absolute the report of a referee. (Reported below, 24 Hun, 307.)

This action was brought to obtain a judicial construction of the will of Michael Burnham, who died in January, 1836.

The case is reported in 17 N. Y. 561.

A final decree was entered therein in June, 1859, in conformity with the decision which adjudged that the will made the trustees named therein, trustees of all the real estate of which the testator died seized, and vested in them a valid power of sale. The trust estate then consisted of

certain real estate in New York city. The decree appointed four trustees, and provided that any party to it, or successor in interest to any such party, might apply, on the foot of the decree, for further directions or instructions. In 1873, James M. Burnham and Thomas Burnham, children of James Burnham, sold and assigned their interest in the estate to said appellant, Pinkney. In October, 1879, prior to which time all of the trustees but one (John Cockle) had died, Anna A. Sherman and other defendants in the action, pursuant to the permission so given in the decree, presented a petition to the court, the material statements in which, as well as the other facts pertinent to the questions discussed, are set forth in the opinion.

*Samuel Hand* for appellant. If a party is brought in *pendente lite* by order, a supplemental summons must be served on him. (*Rankin* v. *Elliott*, 14 How. 337; Freeman on Judgments, § 154; *Balchman* v. *Sepulena*, 39 Cal. 688; *White* v. *Bogart*, 73 N. Y. 259; Code, § 416; *Litchfield* v. *Burwell*, 5 How. 343.) Property cannot be confiscated by act of the legislature, or taken from the rightful owner, without a forensic trial and judgment; a trial by the ordinary modes of judicial proceedings. (*Taylor* v. *Porter*, 4 Hill, 140; *Wynehamer* v. *People*, 3 Kern. 378.) The better and larger definition of due process of law is that it means law in its regular course of administration through courts of justice. (1 Kent's Com. 613.) That portion of the order attempting to compel Pinkney to pay one-fifth of several large allowances of counsel fees, agreed upon between the counsel for the other persons who litigated accounts before the referee, was wrong. (*Low* v. *Rogers*, 8 Johns. 321; *Washburn* v. *Overseers of Hebron*, 9 id. 119; *Wardens* v. *Brown*, 14 How. Pr. 327; *Matter of Rensselaer and S. R. R. Co.* v. *Davis*, 55 N. Y. 145; *Flynn* v. *Eq. L. Ass. Soc.*, 18 Hun, 212.) There was no trust as to Pinkney. The land came to the sons of whom he bought, free of any trust and subject merely to a power of sale in the trustee. (*Savage* v. *Burnham*, 17 N. Y. 562; *Crittenden* v. *Fairchild*, 41 id. 271.)

*Thomas H. Rodman, Jr.*, for respondent Cockle. One out of a number of beneficiaries cannot, by electing to take his share of an estate in a particular form, defeat the execution of a trust or power which was created to be executed for the benefit of all. (*Reed* v. *Underhill*, 12 Barb. 117; *Hetzel* v. *Barber*, 69 N. Y. 1; *Garvey* v. *McDevitt*, 72 id. 563, 564; *Prentiss* v. *Jansen*, 79 id. 485.) The trust, after the death of the testator's widow, in 1854, was a trust in personal property. (*Savage* v. *Burnham*, 17 N. Y. 561, 571.) Trustees are entitled to commissions on real estate as well as on money. (*In re De Peyster*, 4 Sandf. Ch. 511; *Wagstaff* v. *Loweree*, 23 Barb. 209; *Cairns* v. *Chaubert*, 9 Paige, 164.) The estates of the deceased trustees are entitled to half commissions for receiving. (*In re Kellogg*, 7 Paige, 267.) The statute of 1863 is retrospective and regulates the commissions of these trustees at every period of their trusteeship. (*Dakin* v. *Denning*, 6 Paige, 101.)

*Edward M. Shepard* for respondents Sherman & Savage. The appellant was a proper party to the accounting both of rents and of the proceeds of sale. (17 N. Y. 567, 568, 569.) The law of the case was settled against the appellant by the judgment of 1859. (*Campbell* v. *Hall*, 16 N. Y. 575.) The conveyance to the appellant, being by the heirs of one of the beneficiaries named in the will, did not operate as an election to take the property itself, and so prevented the exercise of the power of sale given to the trustee by the will. (*Hetzel* v. *Barber*, 69 N. Y. 11; *Garvey* v. *McDevitt*, 72 id. 563; *Prentice* v. *Janssen*, 79 id. 479, 485.) This proceeding, although had at the foot of the decree of 1859, under its provision that " any party to this suit, or any successor in interest to any such party, * * * may apply on the foot of this judgment," etc., was a distinct and separate proceeding, and was sufficient. (*Marvin* v. *Marvin*, 78 N. Y. 541; *Giles* v. *Halbert*, 12 id. 34; *Belknap* v. *Waters*, 11 id. 477; *Cole* v. *Malcolm*, 66 id. 363.)

Rapallo, J. Although the appellant was not a party to this action, we think the court had jurisdiction to make him a

party to the accounting of the trustee, and to compel him to abide the result of such accounting. He purchased the shares of some of the defendants in the action, amounting, in the aggregate, to four-twenty-firsts of the whole, and took these shares subject to the provisions of the decree of 1859, and to the power in trust to sell and to the right of the trustees to payment of their commissions and expenses. This decree adjudged that the whole property was subject to the power of sale of the trustees; and, among other things, directed them to bring into court and deposit with the New York Life Insurance and Trust Company for the equal benefit of the children of James Burnham, deceased (they being the parties whose interests were purchased by the appellant), one-fifth of the net proceeds of the real estate, subject to the dower right of their mother therein. After this decree and before the sale, the appellant made his purchase, and he acquired thereby the right to these proceeds thus directed to be brought into court, subject to such orders as the court might make concerning them, and if he received more of the fund than he was justly entitled to, the court had power to compel him to restore the excess, by order, without action being brought against him.

The appellant complains that he was not properly made a party to the accounting, and had no notice that any claim was made against him. The proceeding appears to have been initiated in rather an informal manner. No petition for an accounting seems to have been served upon the appellant; but the only petition of which he had notice was one presented by Anna A. Sherman and other defendants in the action, pursuant to a provision of the judgment of 1859, to the effect that any party to the suit or successor in interest to such party might apply on the foot of the judgment for such further directions or instructions as might be proper. This petition set forth that three of the trustees appointed by the judgment had died, leaving John Cockle sole surviving trustee. That he was about to sell the real estate in question, and had agreed upon a sale and proposed to receive the proceeds. That no security had been given by any of the trustees, and the petitioners

prayed that other trustees might be appointed to act with such survivor, and that all might be required to give security. No accounting was asked in this petition, nor was any relief prayed for against Mr. Pinkney, the appellant. All that it contained with reference to him was a statement that he had, in 1873, purchased the interests of the children of James Burnham, deceased, in the property to be sold.

An order to show cause why the prayer of the petition should not be granted was, together with a copy of the petition, served upon Mr. Pinkney, but he did not appear upon the hearing of the matter. All the other parties appeared on such hearing on the 8th of November, 1879, and an order was then made referring it to a referee to take proof of the facts, and ascertain who would be a suitable person to be appointed trustee, and to settle the amount and form of security to be given, etc. This order further recited that said John Cockle, surviving trustee, had on due notice prayed the court that his accounts as trustee be stated, and his lawful commissions allowed him, and stated that all the parties being before the court, it ordered that it be referred to the same referee to settle and pass the accounts of the four trustees named in the petition, and particularly of the said John Cockle, and to take proof thereon, and as to the commissions to which they were entitled, and to report such accounts as settled, and the proofs with his opinion thereon.

A copy of this order was served upon Mr. Pinkney, and he thereby had notice that it had been referred to a referee to settle the accounts of the trustees. If he claimed that this order had been irregularly made, he should have raised the question at that time.

Mr. Pinkney was also served with notices to attend the reference from time to time, which notices stated that the referee would proceed with the accounting.

We think that Mr. Pinkney was by these proceedings made a party to the accounting, and that, under the order, the referee had power to settle the accounts of the surviving trustee, and to make him all proper allowances for expenses and commissions, and also to fix the commissions of the deceased trustees

(*In re Kellogg*, 7 Paige, 267), and to report the proportions of such commissions and expenses which should be borne by each of the parties interested in the fund. The settlement of the accounts of the surviving trustee, whose duty it was to distribute the fund, necessarily involved a determination of the amount to be paid to each of the parties in interest, and of the deductions to be made therefrom for commissions and expenses, and for this purpose, it was necessary to ascertain what share each had in the fund. He ascertained the share of Mr. Pinkney to be four-twenty-first parts thereof. The gross proceeds of the sale were $175,000, of which he credited Mr. Pinkney with four-twenty-first parts, being $33,333.33, less $422.63 for his proportion of unpaid taxes, leaving his share, irrespective of commissions, $32,910.70. He allowed to the trustee, for legal expenses incurred in the matter, $953.75, of which he charged to Mr. Pinkney four-twenty-first parts, and he also charged Mr. Pinkney with four-twenty-first parts of the commissions of the four trustees. The proportion of expenses and commissions thus charged to him amounted in the aggregate to $915.03.

If Mr. Pinkney desired to make any objection to the amounts of these charges, he should have done so before the referee; not having appeared there, we cannot review the amounts of the allowances here. But if they were before us, we are satisfied, by the able opinion of BRADY, J., at General Term, that no error was committed in those respects.

The referee further reported that the real estate in question was sold by John Cockle, the surviving trustee, on the 5th of January, 1880, for the sum of $175,000. This sale was made during the pendency of the reference, and in the statement of the accounts contained in the report, the referee charges the share of Mr. Pinkney with $32,910.70, as having been paid to him. The report does not state how, when, or by whom this payment was made, nor is there any finding of the fact of such payment, other than such charge, and the further statement in the account that he should pay back what he has been overpaid, viz., the $915.03, being the aggregate of the four-twenty-first parts of the expenses and commissions before mentioned.

The referee further states in his report that Mr. Pinkney should pay four-twenty-first parts of the costs and expenses of the accounting, but does not state their amount.

The report is dated April 28, 1880, and on the same day an order was made requiring Mr. Pinkney and the other parties in interest to show cause on the 29th of April, 1880, why the report should not become absolute and be confirmed, and such further or other order made as should be proper. At the hearing upon this order, the counsel for Mr. Pinkney presented to the court an affidavit of Mr. Pinkney, stating that he had never attended any of the references to state the accounts of the trustees and that neither John Cockle nor either of the trustees had ever received for or paid over to the deponent the said sum of $32,910.73, stated in said report to have been paid to him, or any part thereof. On the objection of the counsel for the trustee this affidavit was rejected.

The court thereupon made the order appealed from, whereby the report was confirmed, and the account of the appellant Pinkney was stated, with a recital that he had received $32,-910.73 of the trust estate, without deduction, either for his share of the commissions of the trustees, or for his share of the legal expenses allowed them, or for his share of the costs and expenses of the accounting, and he was ordered to pay to the surviving trustee and to the legal representatives of the deceased trustees, their respective proportions of said commissions and expenses, amounting to the before-mentioned sum of $915.03.

By the same order allowances were made to the several counsel who had appeared upon the accounting, for their services and disbursements, amounting in the aggregate to $3,309.82. Of this sum there was allowed to the counsel for the trustee the sum of $600 for his services, and $231.67 for his disbursements, and to the counsel representing the owners of four of the parts or shares of the estate, for their services, $600 to each, making together $2,400, besides some other small allowances. These sums were fixed by a stipulation or admission of the respective counsel.

Mr. Pinkney was ordered to pay not only his proportion, viz., four-twenty-first parts, of the allowance made to the counsel for the trustee, but also to pay to each of the counsel representing other parties a like proportion of the sums allowed to them respectively. We can find no ground upon which the allowances to parties other than the trustee can be sustained. We are not referred to any statute, or to any authority sanctioning such allowances. The trustees were entitled to be allowed their reasonable expenses for rendering and passing their accounts, but the counsel for the other parties, who attended to protect the interests of such parties in the accounting, should look to their respective clients for their compensation, and we are not aware of any rule or principle whereby any of these parties are entitled to call upon the others to pay counsel fees which they incur on their own behalf for the protection of their personal interests. Where all the parties appear by counsel, it may be very well for them to agree to make a common burden of these expenses, and have them paid out of the common fund, for they are compensated for what they thus contribute toward the expenses of the others by being relieved in part of those they have incurred for themselves. But when, as in the present case, one of the parties has not litigated the accounts, and receives no allowance for expenses or services of counsel, he should not be compelled to contribute to the counsel fees of those who chose to litigate. In the present case there were questions as to commissions affecting some of the parties, in which Mr. Pinkney had no concern, and these were litigated successfully by those parties. Yet the effect of the order is to require him to pay for that litigation. This merely illustrates the injustice which would result from making the counsel fees of one defendant in such a proceeding a charge upon a co-defendant. But we find no law which sustains these allowances, and we think that it was erroneous to order the appellant to pay them to counsel for parties other than the accounting trustee.

The counsel for the appellant insists that the order requiring Mr. Pinkney to pay is erroneous in all respects, for the

further reason that it does not appear that he has received the money, except from the charge contained in the account in the referee's report; that such charge is unsupported by any evidence whatever, and the fact is denied by the affidavit of Mr. Pinkney which was presented to the court on the hearing of the motion to confirm the report. On an examination of the testimony taken before the referee, we have failed to find any evidence of the payment to Mr. Pinkney, of any sum whatever. All that appears in the case is an unverified statement presented to the referee by the counsel for the trustee, and appended to the report as exhibit 8, in which the surviving trustee is debited with $175,000, as received by him for the proceeds of sale of the property, and credited with sundry payments, among which is an item "paid John M. Pinkney his share in full." No voucher for this alleged payment appears in the case, or any evidence of the fact. The usual way of bringing up the question would have been by exception to the report; but in this case the practice of filing the report and allowing to the parties time to file exceptions does not seem to have been pursued, but on the contrary an order was made, on filing the report, requiring the parties to show cause on the next day why it should not be confirmed, and it seems to have been intended that any objections they might desire to make thereto should be presented on the hearing of that order. The findings of the referee did not have the force of findings upon issues of fact referred to him to hear and determine, for the reference was merely to report the proofs and his opinion thereon to the court, and when this report was presented and the parties required summarily to show cause why the report should not be confirmed, we think it was competent for the appellant to take the objection that the fundamental fact on which the power of the court, to order him to make the payments, depended, had not been established by any proof, and to support this objection by a sworn denial that the fact existed; and that his failure to appear on a reference of this description did not preclude him from taking that objection. But in addition to these considerations it

must be borne in mind that the question whether Mr. Pinkney was bound to refund, or to make any payments, was not referred to the referee, and his report thereon has no force as a finding. When the order of reference was made no claim existed against Mr. Pinkney, for it is alleged that the payment to him was made January 5, 1880, long after the order of reference and pending the hearing thereon, and the action of the court in ordering him to refund was original, and based upon a fact supposed to have occurred during the pendency of the reference, and to be disclosed by the proofs reported by the referee to the court. This supposed fact having been denied under oath, and no proof thereof appearing, we think that the court should have required satisfactory proof of it before making the order.

The order should be reversed as to the appellant Pinkney, and the matter should be remitted to the Special Term, to ascertain, in such manner as it may direct, whether the alleged payment to the appellant of $32,910.73 was, in fact, made. If said fact is established, the order should be affirmed as to the appellant's share of the commissions and expenses allowed to the trustees, and the expenses allowed to the surviving trustee for passing his accounts, and reversed as to the residue of the payments required of the appellant, without costs in this court to either party. If the fact of said payment is not established, the order should be reversed, as to the appellant Pinkney, with costs.

All concur.

Ordered accordingly.